UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAYLA G. PEZOLANO,<br><br>        Plaintiff,<br><br>v.<br><br>PARKER JEWISH INSTITUTE FOR HEALTH CARE AND REHABILITATION, CASE BY CASE LEGAL SERVICES, P.C and SCHWEET LINDE & COULSON, PLLC<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Kayla G. Pezolano files this class action complaint against defendants Parker Jewish Institute For Health Care And Rehabilitation, Case By Case Legal Services, P.C., and Schweet Linde & Coulson, PLLC, and in support thereof, states as follows:

## INTRODUCTION

1.  Plaintiff Kayla G. Pezolano ("**Plaintiff**"), through her attorneys, brings this action to challenge the actions of defendant Parker Jewish Institute for Health Care and Rehabilitation ("**Parker**"), defendant Case By Case Legal Services, P.C. ("**Case**") and defendant Schweet Linde & Coulson, PLLC ("**Schweet**") (hereinafter collectively referred to as "**Defendants**"), with regard to: (i) the creation of a purported debt and personal financial liability incurred by Plaintiff and all others similarly situated through the use of Parker's deceptive admissions agreement to its facility; and (ii) Case and Schweet's subsequent attempts to unlawfully and abusively collect such a purported debt allegedly personally owed by Plaintiff.

2. As alleged with specificity below, Parker's deceptive practices violate New York's General Business Law § 349, which declares unlawful "[d]eceptive acts or practices in the conduct of any business." As amended in 1980, the statute provides a private right of action to "any person who has been injured by reason of" such illegal conduct. General Business Law § 349 [h]. The purpose of this amendment was to expand enforcement authority beyond the Attorney General and thereby ensure more optimal protection of the public and "permit private enforcement against injuries resulting from consumer fraud." *Karlin v IVF Am.*, 93 NY2d 282, 291 (1999)(internal citations omitted).

3. In addition to Parker's unlawful conduct and as alleged with specificity below, Case and Schweet have engaged in unlawful conduct of its business and this conduct caused Plaintiff damages for its violations of the Fair Debt Collection Practices Act 15 U.S.C. §1692 (hereinafter "FDCPA").

4. Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

5. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. § 1692(e). After determining that the existing consumer protection laws were inadequate, id. § 1692(b), Congress

gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id*. § 1692k.

6. While many violations are described below with specificity, this Complaint alleges violations of the FDCPA in its entirety.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## PARTIES

9. At all relevant times to this complaint, Plaintiff is a natural person who resided in New York, New York. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3).

10. Upon information and belief, Parker is a domestic corporation that operates a rehabilitation facility located in the City of New Hyde Park, State of New York.

11. Upon information and belief, Case is a foreign corporation authorized to do business in New York that uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts alleged to be due another.

12. Upon information and belief, Schweet is a foreign limited authorized to do business in New York that uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts alleged to be due another.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this class action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201. The Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

15. Further, each Defendant conducts business within the State of New York, and this Court has personal jurisdiction over Defendants.

## FACTUAL ALLEGATIONS

Admission to Parker Creating Alleged Debt

16. In or around December 2018, Plaintiff helped admit her great great uncle, Arthur Ward ("Resident Ward"), to Parker's facility.

17. As part of the admissions process to Parker, Plaintiff signed an admission agreement dated December 3, 2018 (the "Admissions Agreement") as the "Resident Representative."

18. Within the Admissions Agreement, Plaintiff (as the Resident Representative), agreed to certain obligations.

19. However, the Admissions Agreement clearly and expressly states that the Resident Representative shall *not* incur *any* personal financial responsibility for the Resident's admission to Parker.

20. Specifically, Section V. Financial Arrangements Obligation of Resident and Resident Representative provides:

> The Resident Representative is responsible to provide payment from the Resident's income and resources to the extent he or she has access to the Residents' income and resources *without* the Resident Representative incurring *personal financial liability*.

(emphasis added).

21. Section V. further provides in bold text:

> **NOTE: The Resident Representative is not personally liable for the cost of care from the Resident Representative's personal assets.**

(emphasis in original).

22. Resident Ward resided at Parker from November 30, 2018 through February 6, 2019, when Resident Ward was discharged.

23. Resident Ward was readmitted to Parker on February 8, 2019 through March 22, 2019.

24. Resident Ward has since passed away.

Case's Unlawful Actions

25. Despite the clear and unambiguous language in the Admission Agreement, Plaintiff received a collection letter from Case dated January 11, 2021 attempting to collect $46,485.62 ("Case Letter") for Resident Ward's care at Parker.

26. Plaintiff adamantly disputes owing this alleged debt or having any financial responsibility for the alleged debt referenced in the Case Letter due to the express language in the Admissions Agreement indicating that Plaintiff would not be personally responsible for the cost of Resident Ward's care.

27. By its actions, Case engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt. Consequently, Case violated 15 U.S.C. § 1692d.

28. Through the Case Letter, Case made false, deceptive, and misleading representations regarding the amount owed on the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

29. Since Case was not authorized to collect a balance of $46,485.62, Case violated 15 U.S.C. § 1692e(5), by collecting a debt when it was not legally authorized to do so, and threatened an action it could not have taken.

30. Case's unlawful, abusive, and harassing attempts to collect an authorized balance resulted in a violation of 15 U.S.C. §§ 1692f.

31. Case falsely represented that Plaintiff owed the debt and implied that Plaintiff was obligated to pay an unauthorized balance, thereby violating 15 U.S.C. § 1692f(1).

32. As a result of Case's conduct set forth above, Plaintiff suffered damages in the form of mental anguish and emotional distress type damages, which manifested in symptoms including but not limited to frustration, anxiety, loss of sleep, embarrassment, and shame.

Schweet's Unlawful Actions

33. To make matters worse, Schweet then filed a collection lawsuit in the Superior Court of the State of Washington ("Collection Case") against Plaintiff arguing that Plaintiff has incurred personal financial responsibility for the cost of Resident Ward's care.

34. In the Collection Case, Schweet specifically alleges that "[Plaintiff] has become indebted to Plaintiff for the cost of services rendered to Resident Ward."

35. Such an allegation is in direct contradiction to the Admissions Agreement that expressly provides: "[t]he Resident Representative is not personally liable for the cost of care from the Resident Representative's personal assets."

36. Nevertheless, Schweet is seeking to hold Plaintiff personally liable for an alleged $61,931.22 indebtedness.

37. In response to the filing of the Collection Case, Plaintiff was forced to hire an attorney to represent her in the defense of the lawsuit.

38. It is clear from the Admission Agreement, however, that the Collection Case is a frivolous lawsuit.

39. By filing a suit against Plaintiff and serving Plaintiff with that lawsuit for an unauthorized balance, Schweet engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt. Consequently, Schweet violated 15 U.S.C. § 1692d.

40. Through the conduct described above, Schweet made false, deceptive, and misleading representations regarding the amount owed on the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

41. Since Schweet was not authorized to collect a balance of $71,636.35, Schweet violated 15 U.S.C. § 1692e(5), by collecting a debt when it was not legally authorized to do so, and threatened an action it could not have taken.

42. Schweet also violated 15 U.S.C. § 1692e(5) by threatening an action it could not have taken.

43. Schweet's unlawful, abusive, and harassing attempts to collect an unauthorized balance resulted in a violation of 15 U.S.C. §§ 1692f.

44. Schweet falsely represented that Plaintiff owed the debt and implied that Plaintiff was obligated to pay an unauthorized balance, thereby violating 15 U.S.C. § 1692f(1).

45. As a result of Schweet's conduct set forth above, Plaintiff suffered economic damages and damages in the form of mental anguish and emotional distress type damages, which manifested in symptoms including but not limited to frustration, anxiety, loss of sleep, embarrassment, and shame.

Parker's Deceptive Practices

46. As alleged with specificity herein, Parker engages in materially misleading consumer-oriented conduct that caused Plaintiff and others similarly situated to suffer an injury due to such deceptive practices.

47. Specifically, Parker's consumer-oriented conduct consists of a nationwide scheme that targets similarly situated consumers, relatives and friends of folks that are being admitted to its facility and therefore then become Resident Representatives.

48. Parker engages in deceptive practices affecting all Resident Representatives that execute an Admission Agreement.

49. Parker's deceptive practices do not involve a single-shot, private contract dispute unique to the parties herein.

50. Rather, Parker has materially misled hundreds of Resident Representatives with its deceptive agreement.

51. Indeed, Parker has initiated previous litigation wherein Parker sought to hold a Resident Representative personally financially responsible for a resident's care even though its Admissions Agreement expressly forbids the same.

52. Although Parker's Admissions Agreement clearly states that Resident's Representatives are "not personally liable for the cost of care from the Resident Representative's

personal assets," Parker utilizes several law firms to unlawfully collect amounts that they clearly do not owe.

53. Parker's legion of law firms flout the FDCPA in their unlawful, abusive, and harassing attempts to collect unauthorized balances from innocent and unsuspecting Resident Representatives.

## CLASS ALLEGATIONS

54. Plaintiff brings claims, pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 23, individually and on behalf of the following consumer classes:

**Collection Letter Class**: Within three years prior to the filing of the instant complaint, all consumers who executed an Admission Agreement as a Resident Representative and received a collection letter arising out of the care rendered at Parker.

**Collection Action Class**: Within three years prior to the filing of the instant complaint, all consumers who executed an Admission Agreement as a Resident Representative and were named in a lawsuit arising out of the care rendered at Parker.

55. The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they attempt to collect and/or have purchased debts.

56. Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

57. There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The

principal issue is whether the Parker violated the GBL by seeking to collect debts from Resident Representatives. There is also a common issue of whether Case and Schweet attempted to collect a debt from class members that is not authorized by law or by agreement.

58. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

59. The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiffs nor their attorneys have any interests, which might cause them not to vigorously pursue this action.

60. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) **Numerosity**: The Plaintiff is informed and believes, and on that basis allege, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical.

(b) **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members.

(c) **Typicality**: The Plaintiff's claims are typical of the claims of the class members. The Plaintiffs and all members of the Plaintiff Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d) **Adequacy**: The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members.

The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e) **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

61. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692f et seq. (AGAINST CASE AND SCHWEET)

63. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully set forth herein.

64. Case and Schweet's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

65. Pursuant to 15 U.S.C. § 1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

66. More specifically, pursuant to 15 U.S.C. § 1692f (1) a debt collector may not attempt to collect an amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

67. Case and Schweet violated 15 U.S.C. § 1692f (1) by attempting to collect an amount that they were not legally or contractually entitled to.

68. By reason thereof, Case and Schweet are liable to Plaintiff for judgment that Defendant's conduct violated Section 1692f et seq. of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## COUNT II
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692e et seq. (AGAINST CASE AND SCHWEET)

69. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully set forth herein.

70. Case and Schweet's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

71. Pursuant to 15 U.S.C. §1692e, a debt collector is prohibited from using false, deceptive, or misleading representation in connection with the collection of a debt.

72. Case and Schweet violated said section by:

   a. Falsely representing the character, amount, and legal status of the alleged debt in violation of 1692e(2);

   b. Taking action that cannot legally be taken in violation of 1692e(5); and

   c. Making a false representation in connection with the collection of a debt in violation of 1692e(10).

73. By reason thereof, Defendant is liable to Plaintiff for judgment that Defendant's conduct violated Section 1692e et seq. of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## COUNT III
## VIOLATIONS OF THE NY GBL § 349
## (AGAINST PARKER)

74. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully set forth herein

75. Each of the deceptive acts and practices alleged with specificity herein was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of GBL §349 independent of whether it also constituted a violation of any other law.

76. Each of these actions alleged with specificity herein was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public. The deceptive practices alleged with specificity herein are recurring practices that Parker has taken, not just against Plaintiff, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of placing unlawful personal financial responsibility and burdens on Resident Representatives.

77. Each of Parker's deceptive acts, by their nature, involves a material misrepresentation.

78. As a result of these violations, Plaintiff has suffered pecuniary and non-pecuniary harm, including but not limited to, the costs of defending the Collection Action, and is therefore entitled to actual damages, punitive damages of up to $1,000 attorneys' fees and costs.

79. Plaintiff's actual damages include, without limitation, sleep deprivation, anxiety, difficulty in performing work, damage to her credit and the cost of retaining counsel to defend the Collection Action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and Abbas Kazerounian, Esq., Ryan McBride, Esq. and Ross H. Schmierer, Esq. as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages;

(c) Awarding Plaintiff and the Class actual damages;

(d) Awarding Plaintiff and the Class punitive damages;

(e) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(f) Awarding pre-judgment interest and post-judgment interest; and

(g) Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 5, 2021

KAZEROUNI LAW GROUP, A.P.C.

By: _____

Ross H. Schmierer, Esq.
ross@kazlg.com
Abbas Kazerounian, Esq.
ak@kazlg.com
Ryan McBride, Esq.
(*Pro Hac Vice* Application Forthcoming)
ryan@kazlg.com
800 Third Avenue, Suite 2800
New York, NY 10022
Phone: (800) 400-6808
Fax: (800) 520-5523

*Attorneys for Plaintiff*